IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROSE PUGH,

                          Plaintiff,                    Case No. 3:07 CV 1094

      -vs-

                                                        MEMORANDUM OPINION

COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge David S. Perelman (Doc. 19), Plaintiff Rose Pugh's ("Plaintiff") objections to the R&R (Doc. 20), and the response of the Commissioner of Social Security (Doc. 21). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of those of the Magistrate Judge's findings to which Plaintiff objects.

**I. Background**

    **A. Procedural history**

Plaintiff filed her first application for disability insurance benefits in 1999. Tr. 47. Plaintiff alleged that she became disabled as of September 30, 1998. Tr. 47-49. She also filed an application for supplemental security income. Tr. 487. After these claims were denied initially and on reconsideration, Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ"). Tr. 44. An evidentiary hearing was held on July 25, 2001, and the ALJ denied Plaintiff's claims. Tr. 18-27.

Plaintiff then initiated an action in federal court. The court entered a decision reversing the Commissioner's final determination and remanding the claims for further proceedings. *Pugh v. Commissioner of Social Security*, No. 3:03CV5718 (N.D. Ohio Nov. 23, 2004); Tr. 591-606.

On September 13, 2006, after a second evidentiary hearing, the ALJ found that Plaintiff is not disabled and thus not entitled to benefits. Tr. 574-85. Specifically, the ALJ concluded that "there is ample evidence from which to conclude that mental retardation, as contemplated by Listing 12.05C, including the introductory diagnostic paragraph from Listing 12.05(A), is not present in this case." The headings of the ALJ's Findings of Fact and Conclusions of Law were:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity since September 30, 1998, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: multi-level degenerative disc disease of the lumbar spine and borderline intellectual functioning. Additionally, the claimant is status post L4-5 laminectomy, ankle fracture (with solid union), and bilateral bunionectomies (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertion. Specifically, she is able to sit, stand, and walk six hours in an 8 hour workday, lift and carry 10 pounds frequently and 20 pounds occasionally, occasionally bend, stoop, kneel, crouch, crawl, and climb stairs, and perform simple repetitive tasks involving one or two step job instructions. She is precluded from climbing ladders, ropes, or scaffolds.
>
> 6. The claimant is unable to perform any of her past relevant work (20 CFR 404.1565 and 416.965).

> 7. The claimant was born on October 1, 1963 and was 35 years old on the alleged disability onset date, which is defined as a younger individual age of 18-44 (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue in this case because the claimant's residual functional capacity limits her to unskilled work (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.968).
>
> 11. The claimant has not been under a "disability" as defined in the Social Security Act, from September 30, 1998 through the date of this decision (20 CFR 404.1520(g) and 4165.920(g)).

Tr. 579-585.

Plaintiff sought review of the ALJ's decision by the Appeals Council. On February 9, 2007, the Appeals Council concluded that the ALJ's decision was supported by the evidence of record, and this action followed. Tr. 561.

Magistrate Judge Perelman recommends that this Court affirm the final decision of the Commissioner denying Plaintiff's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i), 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

Plaintiff filed a timely objection to the R&R on July 17, 2008 requesting that this Court not adopt the R&R and overturn the Commissioner's denial of benefits, or in the alternative, remand for proper adjudication. Doc 20 at 4.

Despite the voluminous record before this Court, the only issue raised on judicial review, and thus the only issue to decide here is whether the ALJ erred in concluding that Plaintiff failed

3

to satisfy Listing 12.05C. For the following reasons, this Court agrees with the Magistrate Judge's findings that the Commissioner's denial of Plaintiff's application is supported by substantial evidence and, therefore, hereby adopts the R&R in full.

**B. Facts**

The relevant facts to the issue before this Court relate to Plaintiff's mental impairment. Plaintiff was born October 1, 1963. Tr. 47. Plaintiff testified that she studied through the tenth grade, some of it in special education. Tr. 513, 528. Plaintiff testified that she can read the newspaper but cannot understand some big words. Tr. 513. When Plaintiff was 16, according to her school records, Plaintiff was found to have an IQ of 63 by school Psychologist Dr. Robert Kehres. Tr. 96. Dr. Kehres did not make a medical diagnosis. When she was 17, Plaintiff's school records indicate that she had difficulty in gross and fine linear measurement, difficulty making change, and difficulty coordinating both hands in cooperation. Tr. 103-104. The school testing also suggested that Plaintiff had strong abilities in decision making and independent problem solving, although she had to re-take the independent problem solving test. Tr. 105-106.

The record includes some of Plaintiff's past report cards. In 1976-1977, Plaintiff received one A (Social Studies), two Bs (English and Science), and two Cs (Home Economics and Special Education Math). Tr. 90. In 1977-1978, Plaintiff's grades dropped to one C (English), three Ds (Physical Education, Social Studies, Reading), and three Fs (Math, Home Economics, Science). *Id.* In 1979-1980, her last year of school, Plaintiff's grades improved and she received three Bs (History, Math, Art), one C (English), and one F (Physical Education). Tr. 91.

In 1980, Plaintiff was tested using a "Work Behavior Scale." Tr. 109. All of Plaintiff's scores were in the top three out of four levels and in the "Physical" category, Plaintiff's score was

in the highest level. *Id.* Plaintiff's score was considered to be in the second highest level in the "Social-emotional" category. Plaintiff received her lowest scores in the third category, "Work Behavior and Skills," which required "work adjustment" in punctuality and transportation. *Id.* Plaintiff quit school after tenth grade at age seventeen because of moving around and trouble learning. Tr. 299.

Several years later, as an adult, when Plaintiff took a certification examination to become a nurse assistant, she admitted that she copied some of her answers from other test takers. Tr. 772. As a nurse assistant, Plaintiff was unable to read thermometers and take blood pressure. Tr. 774. As a result, she used previous readings or guessed the reading. *Id.*

On May 5, 1999, Plaintiff underwent an evaluation with William B. Schonberg, Ph.D. Tr. 299-304. The evaluation reported Plaintiff's verbal IQ score at 67, her performance IQ at 69, her full scale IQ at 65, and her reading at a 3.8 grade level. Tr. 301. Based on these scores, Schonberg opined that Plaintiff was functioning within the mildly retarded range of intelligence. *Id.* However, Schonberg concluded that Plaintiff did not meet the criteria for a diagnosis of mental retardation. Tr. 302.

In 2000, State Agency psychological consultants reviewed Plaintiff's record and concluded that Plaintiff did not have mental retardation. Tr. 334. The doctors noted that Plaintiff drives a car, shops, and handles household tasks. *Id.*

At the administrative hearing, a vocational expert testified that Plaintiff could perform the full range of the unskilled sedentary job base and 90% of the light unskilled job base, so long as she is limited to simple, repetitive tasks involving one- or two-step job instructions. Tr. 549-50.

**II. Standard of Review**

**A. Review of an R&R**

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b). The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of a magistrate judge, to which proper objection is made, and may accept, reject, or modify in whole or in part the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72.3(b). This Court has reviewed the findings of the Magistrate Judge *de novo*. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

**B. Disability standard**

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; *see id.* § 416.905.

A five-step sequential process, 20 C.F.R. § 404.1520, is employed by the ALJ to determine whether a claimant has a valid disability:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . . Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If a claimant is found to be disabled or not disabled at any point in the evaluation process, the determination is made without completing the remaining steps. 20 C.F.R. § 404.1520(a).

"During the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing *Young v. Sec'y of Health & Human Services*, 925 F.2d 146, 148 (6th Cir. 1990)).

In the instant case, at Step Two the ALJ found that Plaintiff had two severe impairments: multi-level degenerative disc disease of the lumbar spine, and borderline intellectual functioning. Tr. 580. However, at Step Three the ALJ determined that Plaintiff did not meet a listed impairment. Tr. 581. Specifically, the ALJ concluded that Plaintiff was not mentally retarded and did not satisfy the definition section of listing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

### C. Review of Commissioner's decision

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive unless this Court finds no substantial evidence exists to support the decision. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Deference must be given to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

The Sixth Circuit has explained that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (citations and internal quotations omitted). Below, this opinion responds to Plaintiff's arguement that the Magistrate Judge erred in applying the "zone of choice" explanation to the instant case.

This Court may reverse the decision and remand for a new hearing if it determines that the ALJ's decision was not supported by substantial evidence. 42 U.S.C. § 405(g). This Court may also reverse the ALJ's decision and award benefits, but only when all essential factual issues have been resolved and the record unquestionably establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

**III. Discussion**

**A. The Magistrate Judge did not err in affirming Commissioner's conclusion that Plaintiff failed to meet the requirements of 12.05C**

Plaintiff maintains that the ALJ's decision denying benefits is not supported by substantial evidence. Specifically, Plaintiff takes issue with the Magistrate Judge's conclusion that Plaintiff lacked deficits in adaptive behavior and that there was "virtually no evidence in this record reflecting that whatever deficits may exist after age 22 were manifested prior thereto." Doc. 19 at 4.

Listing 12.05C sets forth the requirements for a finding of mental retardation, in relevant part, as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

8

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

The Sixth Circuit has ruled that to satisfy Listing 12.05C, a claimant must satisfy the diagnostic description in the introductory paragraph and the specific factors of paragraph C. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Therefore, to make a claim under Listing 12.05C, a claimant must prove the following: (1) the claimant suffers from significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22; (2) the record demonstrates a valid verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007); see also *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).

Here, substantial evidence exists to show that Plaintiff fails to satisfy the requirements of the introductory paragraph. This Court, like the Magistrate Judge, accepts that Plaintiff has significantly subaverage intellectual functioning. Plaintiff's IQ scores are in the mid-to-high 60s.

However, this Court concludes that substantial evidence exists that Plaintiff does not suffer from deficits in adaptive functioning that initially manifested before age 22. The evidence presented by Plaintiff is, as described by the Magistrate Judge, "a mixed bag." Doc. 19 at 4. When Plaintiff was in junior high, although Dr. Kehres found Plaintiff's IQ to be 63, Plaintiff was not medically diagnosed with any mental impairment. Also, school testing revealed that although

9

Plaintiff had difficulty in some areas such as fine linear measurement, school testing also concluded that Plaintiff has strong abilities in other areas such as decision making. Furthermore, the record includes a mix of grades in school, including one year when Plaintiff earned one A, two Bs and three Cs. Plaintiff's scores in the "Work Behavior Scale" placed her at a competitive level in some categories, borderline in others, and at low levels in a few such as punctuality. This Court adopts the conclusion by the Magistrate Judge by "not consider[ing] the foregoing to be reflective of deficits in adaptive [functioning that initially manifested before age 22]." Doc. 19 at 5.

The instant case is similar to the situation in *West v. Comm'r of Soc. Sec.*, No 06-5763, 2007 WL 1991059 (6th Cir. July 5, 2007). In *West*, the plaintiff had a seventh grade education, he read at a third grade level, and his IQ scores were between 66 and 72. The Sixth Circuit concluded that the claimant's normal day activities and the lack of a medical diagnosis negated the conclusion that he met the requisite standard. Here, Plaintiff had a tenth grade education, she read at a grade 3.8 level, and her IQ scores were between 65 and 69. Also, Plaintiff participates in normal life activities such as driving, shopping, and household tasks. Plaintiff was not diagnosed with mental retardation by any of the doctors whom she consulted.

Plaintiff relies on *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). In *Foster*, the plaintiff did not satisfy the introductory paragraph of the applicable listing because the plaintiff's only evidence regarding the developmental period was that the plaintiff dropped out of school in ninth grade. *Id.* at 355. Also, the plaintiff's past jobs demonstrated that she had once had the ability to perform relatively complicated tasks. *Id.* Here, Plaintiff argues that, unlike in *Foster*, Plaintiff has presented enough evidence of her development period limitations, and Plaintiff's previous work was only semi-skilled.

However, the fact that Plaintiff may have supplied a greater quantity of evidence than the plaintiff in *Foster* does not mean that Plaintiff has met her burden. While some evidence might support the conclusion that Plaintiff suffers from deficits in adaptive functioning, a great deal of evidence does not. This weakens the conclusion that Plaintiff's deficits were manifested in her first 22 years. Furthermore, while Plaintiff's previous work was semi-skilled, it was not unskilled and does not pertain to Plaintiff's "developmental period." This Court concludes that because substantial evidence exists to support the ALJ's conclusion, the ALJ's decision must stand.

**B. The Magistrate Judge did not err in applying the "zone of choice" explanation to the Commissioner's decision.**

Plaintiff argues that the Magistrate Judge erred in applying the "zone of choice" explanation to the Commissioner's decision "rather than applying Sixth Circuit case law directly relevant to the applicable issue." Doc. 20 at 1. Plaintiff is mistaken. The standard for reviewing the Commissioner's decision is pursuant to Sixth Circuit case law discussed herein, relevant to the applicable issue in this case, and central to this Court's decision.

Under *Mullen v. Brown,* the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." 800 F.2d at 545 (6th Cir.1986). In *Mullen*, the Sixth Circuit affirmed the ALJ's decision to deny benefits despite ambiguity in the record because substantial evidence supported the ALJ's conclusion. *Id.* The Sixth Circuit has held that if the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, and even if substantial evidence supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

11

Here, after considering the record as a whole, this Court adopts the Magistrate Judge's determination that the ALJ was "was plainly within his 'zone of choice'" when the ALJ concluded that Plaintiff does not suffer from deficits in adaptive functioning initially manifested before age 22. Doc. 19 at 4.

**IV. Conclusion**

For the reasons discussed herein, the Court adopts the Report & Recommendation of the Magistrate Judge in its entirety.

IT IS SO ORDERED.

                                                 s/ *David A. Katz*
                                                 DAVID A. KATZ
                                                 U. S. DISTRICT JUDGE